All rise. The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this honorable court. Good morning. Our first case this morning is Brown v. Veterans Administration. Ms. Burgess, you may proceed. Thank you, Your Honor. Thank you and good morning. I'm Minnette Burgess, the attorney for Mr. Brown, the appellant in this matter. And I argue in support of Mr. Brown's appeal of the ruling issued by the Administrative Judge Kasich of the Merit System Protection Board. First of all, I would like to reserve seven minutes of my time for rebuttal. Sure. We've got it. Please proceed. And so I'll limit my direct argument to eight minutes this morning. This matter, as you know, involves an action at the Veterans Affairs Medical Center in Tucson, Arizona, and my client, Mr. Brown, who was an information technology specialist there in Tucson. Mr. Brown was well experienced and educated in the position of information technology and had served with the – The board found that four of the five counts were proven and therefore he should be removed. What's wrong with that? Your Honor, the evidence supporting those alleged counts is really not supported by the record. And I could get into those specifically if you – Well, the record is going to be a problem because, of course, we have to accept the board's finding of facts. And unless there's almost nothing to support their viewpoint, we have to be bound by that. Did they make any errors of law? There are – I believe that those findings by the merit system administrative judge, many of them are not supported by the evidence. Not supported by even substantial evidence? Pardon me? Not supported even by any level of evidence? Well, there's a basic dispute on many facts, but one of the – if I may explain why I think they're not supported by the evidence. A fundamental ruling by the judge in this case had to do with an aspect of the findings related to these meetings which occurred after the – or during this performance improvement period. During that period of time, these meetings consisted basically not of a good faith effort to explain to Mr. Brown what specifically was needed or specifically was expected of him, but instead was basically a scenario where he was tested on certain things that were not really related necessarily to his performance or his job duties. Very critical. Ms. Burgess, you said the board's findings were not supported by substantial evidence. I'm sorry, sir. Could you speak up to me? The board's opinion indicated that he failed to comport his performance to the expected benchmark. He missed deadlines. He failed to accomplish certain backups. The server failed on several occasions, and he failed to implement a plan to solve the problem. And there's a whole list of things that he failed to do. Now, you might disagree, and we might disagree, too, if we were the original fact finders. But to say that there's no substantial evidence doesn't seem to be the case. Substantial evidence is a reasonable amount of evidence that someone might accept to prove a point. So why isn't that substantial evidence? If I could speak to that, the proceedings of those 12 meetings, which purportedly showed by Mr. Walston, who was the manager, this evidence that he was trying to create during those 12 meetings. One of the fundamental aspects of the code that requires this procedure is a due process code, a fundamental commitment to fairness, a fundamental commitment to good faith. And during those meetings, each time they were concluded, Mr. Brown asked for an electronic, if you will, record. Mr. Walston was making minutes. Mr. Brown asked could that be forwarded to him so that he could review that, so that he would have the opportunity to understand specifically what it was that Mr. Walston expected of him. Fundamental fairness. Did Mr. Brown ever put anything in writing explaining to his supervisor that he didn't understand? No, he wouldn't provide that to him. Oh, I'm saying did Mr. Brown ever put anything in writing? I mean, he knows he's going in time after time after time and that he's under this review. Why didn't he put something in writing to say you're not giving me clear guidance? I don't know why. I wasn't involved representing Mr. Brown at that time. My understanding, based on the evidence, is that Mr. Brown did not have the permission, if you will, to basically do that during the meetings. He argued. Anything in the record that says that? He felt that Mr. Walston was so in control of the proceedings, there was really no opportunity for him to participate, actually. And there's no question that Mr. Walston refused and failed to provide the kind of guidance for having the meeting, reviewing the meeting, providing that to him. He didn't provide the notes of each meeting until at least a week later, and he never provided them electronically. Basically, he would wait till Mr. Brown got to the next meeting. He would then provide the notes to him. And at that point in time was the moment that he didn't even review those notes with him but proceeded on to the next meeting. There's another issue with regard even to Mr. Walston's capacity to review Mr. Brown's work. Is there any legal authority for the proposition that you have to have, that the supervisor has to have some kind of technical expertise? I think the law simply says it has to be somebody at a higher level, doesn't it? Well, as a supervisor, his position statement, if you review that, you will find that he was required by his position statement to have a fundamental knowledge of the workings of information technology systems, networks, and so on, which is what Mr. Brown was doing. And although there is certainly the notion that in order to be a manager, you don't necessarily have to be able to do the work of someone that you supervise. But certainly, you have to have knowledge and experience when you are specifically criticizing and reviewing their specific work. You have to have a capacity to understand and to communicate effectively about what it is you want them to do. What he had to know was whether the work had been done, and he saw that it wasn't done. In a broader sense, whether the work had been done, but in a particular sense, what were the issues regarding that work? And throughout this entire period, there were issues for Mr. Brown regarding equipment, which he had sincerely and repeatedly tried to resolve. There's a finding that says he was provided the equipment during the PIP period. However, that was at the very end of the period and was not, in fact, at any time relevant to Mr. Brown's capacity. But isn't there evidence that despite these described equipment problems, his colleagues were able to fix the errors, even when he wasn't? Mr. Brown did explain those. Part of the issue was that Mr. Walston, because of his incapacity to understand what Mr. Brown was doing, did not understand what he was doing or the need for the equipment that Mr. Brown was using. But Mr. Brown wasn't the only one that Mr. Walston was supervising in the IT field. Pardon me? Mr. Brown was not the only one that Mr. Walston was supervising in the IT field, was he? There were two other younger gentlemen there, but they were in a different position. They had different equipment. They were doing a whole different system. And even though there is a finding that says that he believed that Tisdale and Gender, who were the other two individuals, understood Mr. Walston, the relevance of that as to whether or not Mr. Walston properly supervised Mr. Brown is another question. And very significantly, I think, and I ask you to look at and consider carefully this question, there was no communication, none whatsoever, prior to this performance improvement period, that Mr. Walston effectively communicated to Mr. Brown that there was an issue with his performance. There is an allegation. The administrative judge found that Mr. Walston was meeting regularly with Brown even before this performance improvement period. He found that he was meeting with him on a couple of occasions. The 12 meetings occurred during the performance plan. But there's nothing in writing. There's no performance review. There was a performance review as late as several weeks before the issuance of the performance improvement plan. All of those reviews were fully satisfactory, if not better. Would you like to preserve some of your rebuttal time? Okay. The important fact on that, if I just may say briefly, is that even though Mr. Walston says someone from the HR department gave him direction, he was never able to say when that occurred or with whom he spoke. Thank you. Thank you. Ms. Toplin? May it please the Court. The government respectfully requests that this Court affirm the MSPB's decision sustaining the VA's decision to remove Mr. Brown for unacceptable performance. The petitioner, Mr. Brown, asserts three primary arguments, none of which have merit. First, she asserts that Mr. Walston was not qualified to administer the PIP. Second, she asserts that there's no adequate notice of Mr. Brown's unacceptable performance such that he had no opportunity to improve. And third, she asserts the PIP meetings don't explain adequately what was expected. As I stated, none of these arguments have any merit. The petitioner's arguments directed towards Mr. Walston's qualifications to administer the PIP is merely an attempt to re-argue the facts because she disagrees with the results. Can I ask a question? Why is it that Carney didn't review Walston's recommendation? I mean, that's what Walston said was going to happen. At least Carney had the technical expertise. Wouldn't that have sort of gotten rid of this whole argument? It's unclear, Your Honor, why Carney did not review the Mr. Brown's removal, but that's not truly relevant to the statutory requirements because the statutory requirements really merely warrant a more qualified supervisor. In respect to Mr. Carney's review, the real issue was Mr. Walston's well-documented instances of Mr. Brown's poor performance. In this case, Mr. Walston painstakingly demonstrated that Mr. Brown merely had to provide adequate diagnosed problems and resolve them in a timely manner, provide updates, implement proactive solutions. The issue, as they must be found, is Mr. Walston, as this court noted, had only the managerial skills to see if work would be done. And once he determined that he was not, the function of the review, either by Mr. Carney or Mr. Laub, is really just a review function. It's to review the record and determine whether or not the proposed removal is proper. And in this case, it truly was. Mr. Walston clearly documented the fact that Mr. Brown was failing to meet the requirements of four of the five sub-elements within technical skills. As I said, the fact that Mr. Walston failed to give Mr. Brown an unsatisfactory rating prior to placing him on the PIP is not truly meritorious. Because the fact that all the prior reviews were solely successful is irrelevant because he was told at the time he was placed on the PIP that his performance was unsuccessful. It was not meeting standards. As I said, Mr. Walston had had prior concerns prior to that time, met with Mr. Brown repeatedly, advised him in his prior reviews that he had concerns about his performance. And ultimately, when further issues arose during 2008, decided to place him on a PIP, which clearly articulated the fact that he was not meeting the requirements for the technical skills critical element and all the sub-elements within that. Why didn't he do a statistical analysis to see how often the servers were down and to compare that to the coworkers who were also responsible for servers? Wouldn't that have been a more objective way to assess these things? It would have been a more objective way with respect to the 98% standard. But that's not the only standard at issue, and that's not a basis of the court's finding. The 98% standard, the court ignored that and found that Mr. Brown failed to meet four of the other five elements. These elements are independent of the 98% standard in the sense that the 98%, it only deals with the fact of whether or not the systems are running. It doesn't deal with the fact as to whether or not they're running properly. Whether or not if something were to happen, there's a plan to resolve it. Whether or not if something were to happen, data isn't lost. Whether or not if something were to happen, you could get the system back up and running in a prompt manner. So this 98% is only one aspect of Mr. Brown's job. Right. Well, the lower court ignored it because no statistics were presented. It didn't ignore it because it wasn't important. Right. It did not ignore it because it was not important, Your Honor. It ignored it because no statistics were presented. And the standard is merely when the agency were to find that they can remove an employee for less than satisfactory performance on sub-elements if overall it shows an unsatisfactory performance on the critical element as a whole. And in this case, the government would submit that it's well-supported that Mr. Brown's failure for the five sub-elements proved that he was not meeting the standards within the technical skills element. Ms. Toplin, those four have at least some level of subjectivity in them. How do we deal with that when there's a judgmental factor in each of the elements that are proven? There's no requirement that they be completely objective. The case law is very clear that you do not need completely objective standards. The standard is to the maximum extent feasible whether they permit accurate evaluation on objective criteria. And this court has specifically recognized that these standards don't have to be quantitative. They can have an element of subjectivity, but they just have to be sufficiently objective to permit accurate evaluation. In this case, the standards are reasonable, and it was clearly explained to Mr. Brown on multiple occasions what was required. It was explained to Mr. Brown that he had to be proactive, to recognize problems in advance, develop solutions, perform backup so that when problems occurred, he could restore the data. It was repeatedly, he understood what it took to meet these elements, and that's the standard to the extent that there would be any ambiguity in the standards themselves. It was fleshed out in detail in the PIP letter that Mr. Walston wrote, specifically advising Mr. Brown as to what he had to do to achieve satisfactory performance, and then fleshed out through the course of the 12 meetings during the PIP, each one of these meetings including detailed notes of what Mr. Brown needed to do, what was going on, once again reinforcing the fact that he had to be proactive in resolving problems, proactive in keeping his supervisors informed, and he had to keep his programs maintained. It was repeatedly . . . Going back to Judge Rader's question, he says that I don't think he was being proactive, or I don't think he was doing this. What objective data did he use? I mean, that event monitor is questionable to the extent that he just pointed to errors that occur in servers. Those event monitors don't tell you much. So what was it that was objective that allowed him to then make the subjective determination that he wasn't satisfying these criteria? What it was was, yes, to the extent that the event monitor is just a list of errors, what it was was that these errors would repeat week to week to week to week. They would discuss them. Mr. Walston would ask Mr. Brown for a plan. Mr. Brown would come in and often be unaware of the error and then fail to provide a plan. The issue was, I mean, he repeatedly would ask Mr. Brown, for instance, with backups. He asked Mr. Brown, please see what backup capability on the U drive is in September. Nothing happened. Mr. Brown failed to provide any update until very near to the end of the PIP, almost a month later, and ultimately, despite the fact that it had been repeatedly stated over and over again throughout the course of these meetings and prior to placing Mr. Brown on a PIP that you need to do your backups, it ultimately took him a month to provide a list, and then there was no restore capability for a week. So the issue was he looked at specific events and looked at the fact that Mr. Brown failed to follow through and provide an adequate plan to resolve them, failed to provide updates as to the status and requested. What's the response regarding problems with equipment issues? The response regarding problems with equipment issues, Your Honor, is that there's ample evidence. The MSPB specifically found that the equipment evidence did not, issues or alleged equipment issues did not prevent Mr. Brown from achieving substantial performance. Well, they later did make changes in equipment, and that arrived rather late in his PIP period, didn't it? Some of it arrived earlier on in the PIP as well. There's no indication that equipment was requested well in advance of the PIP, and, I mean, certainly it's going to take time for equipment to arrive and become functional, but the issue is was not that Mr. Brown's issue was not his failure to resolve problems. It was his failure to create a plan, to implement solutions, to keep his supervisors informed. So it wasn't that there was a failure to fix the problems in a timely manner, and to the extent that this 93 days was allegedly not enough time, there's no allegation in the record, nor has it ever been challenged before, that this was not a sufficient amount of time for a PIP. There's substantial evidence in the record to support the MSPB's finding that the equipment issues did not prevent Mr. Brown from performing, in the sense that there's evidence in the record that when the equipment was requested, it was fulfilled. There's evidence in the record indicating that other colleagues of Mr. Brown were able to resolve problems when they were addressed. The real issue was Mr. Brown's failure to be proactive, to do his job. In this instance, the agency gave him 93 days to perform. They took painstaking steps during the course of these 93 days to ensure that he knew what was required, to give him an adequate opportunity to bring his performance within the technical skills critical element up to a satisfactory level, and Mr. Brown failed to do so. They were very clear in what they needed, and Mr. Brown truly just failed to bring his performance up and address the deficiencies the agency repeatedly informed him of. And after giving him this adequate time and taking these painstaking efforts to try to bring his performance to a more satisfactory level, they ultimately decided to remove him. And the MSPB found, and is well supported by substantial evidence, that they followed all the statutory requirements in removing Mr. Brown, and they followed the proper procedures in effectuating the removal. So unless the court has any further questions, we would respectfully request that you affirm the MSPB's decision, sustaining the VA's decision to remove Mr. Brown for unacceptable performance. Is the age claim still being pursued? No, it is not, Your Honor. Okay. Thank you, Ms. Toplin. Ms. Burgess, you have about five minutes left. Thank you, Your Honor. Ninety-eight percent of the time, keep your systems up and running. That is the only objective measure, which was even mentioned at all in this whole process. Keep your systems up and running 98 percent of the time. And if you look at footnote eight in the ruling. Well, timeliness is pretty objective, isn't it? You're either on time or you're not. And the evidence showed that he was not on time with a good many of the requests made of him. If you look at those requests, they were all things that if you can make sense of those notes and the notes that were given to Mr. Brown, you know, there's nothing that says on a sheet of paper, we expect you to have a plan that includes this information to me by June 10th. Well, the notes themselves are somewhat difficult to decipher. I give you that. But Mr. Walston testified that, in fact, he was meeting regularly with Mr. Brown and explaining all these things to Mr. Brown. Well, the only evidence we have of it are those notes. And we also have the fact that Mr. Brown was not given the opportunity to have those notes in electronic form when he asked for them. Why didn't he take his own notes? Mr. Brown himself apparently did not take notes. And partly because he felt that this document that Mr. According to Mr. Brown in his testimony, the document that Mr. Walston was generating, which is this very confusing, rambling document, there's nothing precise about it. There's nothing that's clearly communicated in it. Mr. Brown believed that that was a document that was supposed to help him, and he wanted to have it after every meeting. Instead, all that Mr. Walston did was keep putting more information in that document. He went to Brown at the meeting to review, did he not? Mr. Brown did not. He conceded that fact. Mr. Brown conceded that he saw the notes, was given the notes, and reviewed them. He did receive the note from the last meeting each time the next meeting occurred. And only a week apart. And the other thing is that he did believe that he had explained to Mr. Walston what he was doing and how it would address the problem. He did not generate documents. That's true. He did not generate documents in response to that until some later time when he was actually trying to research these event log questionnaires, questions that Mr. Walston kept posing to him. Clearly, the objective measure of Mr. Brown's performance was whether or not this equipment worked, whether or not this job got done 98% of the time. It did. Not only did Mr. Walston, was he not able to prove that that did not happen, he did not even have a basis for that allegation. And the judge found that in footnote eight. Basically said that the agency withdrew that. But as to the other elements, I mean, you're opposing counsel. Well, if you look at the other elements, what specifically do they say? Keep your monitors up and running 98% of the time actually addresses the problem. Can you cite me to anything in the law that says numerical benchmarks are required? Well, if you look for a clear benchmark. If you look for a clear benchmark in what was actually issued to him and what was actually required of him by what particular time. And I think that there's some other issues regarding performance that are perhaps analogies. One easy one is tardiness. And I just use that as an analogy because I think that that's important. But again, installing all required patches is very objective. Installing all required patches. He has to get them all and he didn't. But in order for Mr. Brown to install the patches, he had to coordinate that work with another individual called the CAC. Somebody who actually coordinated with the medical records people so that those patches, when they came in, didn't shut their system down. That's what the testimony was. So that Mr. Brown's concern was coordinating with the other individuals who were involved in this technology. And in fact, there was no communication ever by Mr. Walston to Mr. Brown that Mr. Walston had to approve or to know about the installation of the patches. And I realize I have about five seconds left. Basically, with regard to the overall performance of Mr. Brown in this context, I ask you to look at the documents to determine whether or not Mr. Brown was aware when this PIP started of a clear benchmark, whether or not he could have been aware of whether it was fair to communicate with him in the way that he was communicated with. And in fact, the failure of the agency to show that there was an objective measure that he did not meet. Thank you, Ms. Burgess. Our next case is Lawman.